*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

UNPUBLISHED
January 21, 2021

v

MAURICE JACKSON,

        Defendant-Appellant.

No. 349960
Kalamazoo Circuit Court
LC No. 2019-000344-FC

Before: REDFORD, P.J., and MARKEY and BOONSTRA, JJ.

PER CURIAM.

Following a jury trial, defendant was convicted of two counts of first-degree criminal sexual conduct (CSC I), MCL 750.520b(1)(a) and (2)(b) (sexual penetration of person under 13 years of age by individual 17 years of age or older), and two counts of second-degree criminal sexual conduct (CSC II), MCL 750.520c(1)(a) and (2)(b) (sexual contact with person under 13 years of age by individual 17 years of age or older). The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to 25 to 50 years' imprisonment for each of the CSC I convictions and 10 to 30 years' imprisonment for each of the CSC II convictions. Defendant appeals by right. We affirm defendant's convictions and sentences but remand for the ministerial task of amending the presentence investigation report (PSIR).

## I. FACTS

The complainant, TA, testified about a visit to defendant's apartment when she was about eight years old. Defendant and TA's aunt resided together in the apartment. According to TA, during the visit defendant rubbed her buttocks and back while she was attempting to sleep. Subsequently, defendant and TA's aunt moved into a new home joined by several family members. TA, her siblings, and TA's mother moved into the home, living there intermittently for a short time. TA's mother would regularly stay at her boyfriend's home, leaving TA and her siblings at their aunt's home. When TA was not actually residing at her aunt's home, she would often visit there. TA testified that when she did stay at the home, defendant would regularly wake her by rubbing the outside of her thigh. TA also described three or four incidents in which defendant would walk in on her in the shower and briefly look at her before leaving. TA further testified

-1-

about two incidents that occurred at the home in 2017. TA indicated that on one occasion defendant placed his penis on her mouth when she was lying in bed. She additionally testified about a second occasion on which defendant vaginally penetrated her with his penis before turning her over and anally penetrating her with his penis.

## II. PROSECUTORIAL MISCONDUCT AND ASSOCIATED CLAIMS
## OF INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant first argues that he was denied a fair trial as the result of several instances of prosecutorial misconduct. Defendant's attorney objected to only two of the claimed instances; therefore, defendant bootstraps a claim of ineffective assistance of counsel for failure to object to the other alleged instances of misconduct. Unpreserved issues are reviewed for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). Whether counsel was ineffective presents a mixed question of fact and constitutional law, and factual findings are reviewed for clear error, whereas questions of law are reviewed de novo. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002).[1] In *People v Dobek*, 274 Mich App 58, 63-64; 732 NW2d 546 (2007), this Court observed:

> Given that a prosecutor's role and responsibility is to seek justice and not merely convict, the test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial. A defendant's opportunity for a fair trial can be jeopardized when the prosecutor interjects issues broader than the defendant's guilt or innocence. Issues of prosecutorial misconduct are decided case by case, and this Court must examine the entire record and evaluate a prosecutor's remarks in context. The propriety of a prosecutor's remarks depends on all the facts of the case.

---

[1] In *People v Carbin,* 463 Mich 590, 599-600; 623 NW2d 884 (2001), the Michigan Supreme Court recited the well-established principles governing a claim of ineffective assistance of counsel:

> To justify reversal under either the federal or state constitutions, a convicted defendant must satisfy [a] two-part test . . . . First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not performing as the counsel guaranteed by the Sixth Amendment. In so doing, the defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy. Second, the defendant must show that the deficient performance prejudiced the defense. To demonstrate prejudice, the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim. [Quotation marks and citations omitted.]

An attorney's performance is deficient if the representation falls below an objective standard of reasonableness. *People v Toma*, 462 Mich 281, 302; 613 NW2d 694 (2000).

A prosecutor's comments are to be evaluated in light of defense arguments and the relationship the comments bear to the evidence admitted at trial. [Quotation marks and citations omitted.]

Defendant first asserts that the prosecutor asked irrelevant and inflammatory questions on several occasions. A prosecutor commits misconduct when he or she "demonstrates a deliberate and concerted effort to introduce highly prejudicial but totally irrelevant material at trial for the sole purpose of gaining a conviction at any cost." *People v Morgan*, 86 Mich App 226, 227; 272 NW2d 249 (1978). But "[a] finding of prosecutorial misconduct may not be based on a prosecutor's good-faith effort to admit evidence." *Dobek*, 274 Mich App at 76.

Defendant first complains, in extremely cursory fashion, that the prosecutor's questions to a prospective juror during voir dire were improper. Upon tactful and careful questioning by the prosecutor, the prospective juror elaborated—to a limited extent—about being sexually abused when she was younger. It appears that the prosecutor was merely attempting to determine whether the prospective juror could be fair and impartial although we do believe that some of the questions went beyond that necessary to make that assessment. Defendant, however, does not engage in any factual or legal development of this issue; there is no analysis whatsoever. To the extent that the issue has not been abandoned due to inadequate briefing, *People v Kammeraad*, 307 Mich App 98, 143; 858 NW2d 490 (2014),we conclude defendant has not established plain error affecting his substantial rights, nor has he demonstrated deficient performance by counsel or the requisite prejudice.

Defendant next asserts that the prosecutor asked an irrelevant question of DB, who was called as a witness to present other-acts testimony accusing defendant of fondling her buttocks when she was 12 years old as DB was attempting to sleep in the home of a mutual acquaintance. Defendant takes issue with the following question posed by the prosecutor: "What is it about this experience that you'll never forget?" DB responded by speaking about her motivation to testify and the psychological effect of the incident. In our view, the question was relevant to DB's credibility and there was nothing inherently improper about the query. See *People v Layher*, 464 Mich 756, 763; 631 NW2d 281 (2001) (evidence that bears on credibility is relevant and generally admissible). We note that "[f]ailing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). Moreover, there is no indication that the prosecutor asked the question in bad faith. And, again, defendant does not adequately develop his argument. He has not established plain error affecting his substantial rights, nor has he demonstrated deficient performance by counsel or the requisite prejudice.

Defendant next argues that the prosecutor's questions to Detective Kristin Cole about defendant's cell phones, Facebook profiles, and past residences were irrelevant and inflammatory. We disagree. The questions concerned the results of Detective Cole's investigation. In a search of defendant's residence, she found 50 mostly nonfunctioning cell phones. The detective also testified that defendant had six Facebook accounts and had lived at several addresses, many in different southern states. DB was living in Georgia when defendant fondled her, and defendant's Facebook profiles contained links to TA. Although, as the prosecutor notes, these aspects of Detective Cole's investigation did not generate direct evidence of defendant's guilt, the questions sought pertinent background information about the investigation into the offenses. Again,

defendant has not established plain error affecting his substantial rights, nor has he demonstrated deficient performance by counsel or the requisite prejudice.

Next, defendant argues that the prosecutor attempted to elicit testimony from Detective Cole that the trial court had already determined was inadmissible. Prior to trial, the court had ruled that the prosecutor could not introduce exhibits from defendant's phone describing his sexual prowess or showing pornographic DVDs featuring "teen" actresses that had been found during the search. The trial court found that the evidence was inadmissible because of its inflammatory nature. At trial, the prosecutor asked Detective Cole whether she had found evidence indicating "that Mr. Jackson was interested in underage females?" Defense counsel immediately objected, stating, "I think we're treading in some inappropriate areas." The trial court sustained the objection, and the question was never answered by Detective Cole. Although we are not prepared to find that the prosecutor intentionally attempted to undermine the court's pretrial ruling, there is, minimally, an appearance of such an effort. But considering that the question was not a leading question that suggested a particular answer, that the question was not answered, and that the question did not directly concern the charged conduct, we cannot conclude that defendant was denied a fair and impartial trial. Moreover, and obviously, defense counsel was not ineffective given that he objected to the question posed by the prosecutor.

Defendant next argues that the prosecutor impermissibly asked Dr. Sarah J. Brown whether she had made a diagnosis of child sexual abuse. Dr. Brown testified that she had no information of a vaginal assault when she examined TA, that the report from the emergency department indicated that TA denied that anything had happened to her vagina, that TA did not want her private areas examined, that Dr. Brown honored those wishes, that she did examine TA's abdomen, and that nothing remarkable was found. The testimony concerning the abdominal examination was elicited during cross-examination. On redirect examination, the prosecutor asked the following question, "Okay and you did make a diagnosis of child sexual abuse in this case, didn't you?" Before Dr. Brown could answer, defense counsel objected, arguing that the question went beyond the scope of cross-examination. The prosecutor replied that defense counsel had opened the door by asking about TA's diagnosis. The trial court quickly observed that the diagnosis concerned TA's abdomen. The court sustained the objection and instructed the jury to disregard the question.

We find the prosecutor's question troubling because it suggested that Dr. Brown had diagnosed child sexual abuse even though she had not conducted a vaginal or anal examination. See *People v Thorpe*, 504 Mich 230, 235; 934 NW2d 693 (2019) ("[W]e hold that examining physicians cannot testify that a complainant has been sexually assaulted or has been diagnosed with sexual abuse without physical evidence that corroborates the complainant's account of sexual assault or abuse because such testimony vouches for the complainant's veracity and improperly interferes with the role of the jury."). Although a close call, we conclude that reversal is unwarranted because, ultimately, defendant was not denied a fair and impartial trial. Even though it was a leading question, Dr. Brown did not have an opportunity to answer the question. Also, the trial court instructed the jury to disregard the question.[2] Furthermore, given Dr. Brown's

---

[2] "Jurors are presumed to follow their instructions and instructions are presumed to cure most errors." *People v Mann*, 288 Mich App 122 n 23; 792 NW2d 53 (2010).

earlier testimony, the jury was aware that the doctor had not even conducted a physical examination that could have revealed vaginal or anal penetration, likely leaving the jurors with the impression that the doctor had not diagnosed that TA had suffered sexual abuse.

Defendant next argues that the prosecutor vouched for the truthfulness of TA in his closing argument. A prosecutor may not vouch for the credibility of a witness by implying that he or she has some special knowledge that the witness is testifying truthfully. *Dobek*, 274 Mich App at 66. A prosecutor is, however, permitted to argue from the facts and testimony that a witness is credible or worthy of belief. *Id.* We have reviewed the remarks cited by defendant and they very clearly reflect that the prosecutor was arguing that TA was worthy of belief and credible on the basis of the testimony and evidence presented at trial. Defendant has not established plain error affecting his substantial rights, nor has he demonstrated deficient performance by counsel or the requisite prejudice.

Defendant next contends that the prosecutor committed misconduct during his rebuttal closing argument. One of TA's cousins, NA, who may have witnessed one instance of abuse did not testify, and the prosecutor argued to the jury that it could not speculate about what NA would say. Defense counsel had noted in his closing argument that there was no explanation as to why NA did not testify. Defendant now argues that the prosecutor's statement contradicted the principles in the missing witness or adverse inference instruction, M Crim JI 5.12, which the trial court should have given but did not. M Crim JI 5.12 allows a jury to infer that a witness's testimony would have been unfavorable to the prosecution's case. "A missing witness instruction should be given if the trial court finds a lack of due diligence on the part of the prosecution in seeking to produce an *endorsed* witness." *People v Everett*, 318 Mich App 511, 527; 899 NW2d 94 (2017) (emphasis added). In this case, the prosecution did not endorse NA as a witness; therefore, the issues concerning due diligence and M Crim JI 5.12 were not relevant. Moreover, the prosecutor did not commit misconduct by simply observing that it was unknown what NA would testify to had he taken the stand.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL UNASSOCIATED WITH PROSECUTORIAL MISCONDUCT

Defendant argues that his trial attorney improperly counseled him not to testify. "The decision to call or not call the defendant to testify is a matter of trial strategy." *People v Alderete*, 132 Mich App 351, 360; 347 NW2d 229 (1984). There is nothing in the record regarding the nature of any discussions between defendant and counsel regarding whether defendant should take the stand. Defendant maintains that there was no good strategy for not presenting his side of the story when the worst that could have happened was that the jury would not have found him credible. This argument lacks logic because it is made with the benefit of hindsight. At the time of trial, the worst that could have happened, from defendant's perspective, had he testified is that the jury could have found him to be incredible and a liar and convicted him even if TA's testimony, in and of itself, had not entirely convinced the jury of defendant's guilt. We can only speculate with respect to what would have occurred had defendant testified; it may have benefited him or harmed him. We have no basis to assess whether counsel's performance was deficient, nor whether, assuming deficient performance, the failure to take the stand affected the outcome of the

proceedings. In sum, defendant cannot establish a claim of ineffective assistance of counsel warranting reversal.

Defendant next contends that trial counsel should have presented the testimony of NA.[3] Defendant submitted an affidavit with his brief on appeal averring that he asked his attorney to call NA to testify. Defendant believed that NA would testify that he did not see defendant assault TA and that the prosecutor did not call NA as a witness because he would have exculpated defendant. Defendant, however, has presented no evidence whatsoever of what NA's actual testimony would have been. There is nothing in the record showing that trial counsel failed to investigate calling NA as a witness, that counsel failed to make a reasoned decision not to call NA, or that counsel failed to present evidence that was valuable to defendant.

## IV. OTHER-ACTS EVIDENCE

Next, defendant contends that DB's testimony regarding another act attributed to defendant should not have been admitted because it was more prejudicial than probative. We review for an abuse of discretion a trial court's decision to admit evidence. *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999). "When the decision regarding the admission of evidence involves a preliminary question of law, such as whether a statute or rule of evidence precludes admissibility of the evidence, the issue is reviewed de novo." *People v Washington*, 468 Mich 667, 670-671; 664 NW2d 203 (2003). A trial court necessarily abuses its discretion when it makes an error of law. *People v Duncan*, 494 Mich 713, 723; 835 NW2d 399 (2013).

MCL 768.27a(1) provides that "in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant." In *People v Watkins*, 491 Mich 450, 455-456; 818 NW2d 296 (2012), our Supreme Court construed MCL 768.27a:

> We hold that MCL 768.27a irreconcilably conflicts with MRE 404(b), which bars the admission of other-acts evidence for the purpose of showing a defendant's propensity to commit similar acts, and that the statute prevails over the court rule because it does not impermissibly infringe on this Court's authority regarding rules of practice and procedure under Const 1963, art 6, § 5. We also hold that evidence admissible under MCL 768.27a remains subject to MRE 403, which

---

[3] "Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, and this Court will not substitute its judgment for that of counsel regarding matters of trial strategy." *People v Davis,* 250 Mich App 357, 368; 649 NW2d 94 (2002). We cannot, however, insulate the review of counsel's performance by simply calling it trial strategy. *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). Initially, this Court must determine whether strategic choices were made after less than complete investigation, with any choice being reasonable only to the extent that reasonable professional judgment supported the limitations on investigation. *Id.*; see also *People v Ackley*, 497 Mich 381, 389; 870 NW2d 858 (2015).

provides that a court may exclude relevant evidence if the danger of unfair prejudice, among other considerations, outweighs the evidence's probative value. In applying the balancing test in MRE 403 to evidence admissible under MCL 768.27a, however, courts must weigh the propensity inference in favor of the evidence's probative value rather than its prejudicial effect.

MCL 768.27a permits the admission of "evidence that previously would have been inadmissible, because it allows what may have been categorized as propensity evidence to be admitted in this limited context." *People v Pattison*, 276 Mich App 613, 619; 741 NW2d 558 (2007). The *Watkins* Court warned, however, that even though other-acts evidence can be admitted under the statute to show propensity, this does not mean that other-acts evidence can never be excluded under MRE 403[4] as overly prejudicial:

> There are several considerations that may lead a court to exclude such evidence. These considerations include (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. This list of considerations is meant to be illustrative rather than exhaustive. [*Watkins*, 491 at 487-488.]

Defendant does not argue that "listed" offenses were not involved, that the evidence was irrelevant, or that the testimony was used for an improper purpose. Rather, defendant's sole focus is on MRE 403 and the assertion that MRE 403 barred admission of DB's testimony. DB testified that defendant fondled her buttocks when she was 12 years old as DB was attempting to sleep in the home of a mutual acquaintance. In support of his argument under MRE 403, defendant maintains that the "act" happened seven years ago, that no criminal charges were brought, that he was not convicted of any felonies during the interim, that there was no need for the evidence because TA testified, and that DB's testimony was inflammatory.

The other-acts testimony concerned conduct that was extremely similar to defendant's actions in rubbing and fondling TA's buttocks and thighs when she attempted to sleep. The victims were both female and under the age of 13. The charged activity and the past activity were separated by approximately six years, but this Court has found that a difference of 12 years was insufficient to exclude other-acts evidence where the acts were similar. *People v Solloway*, 316 Mich App

---

[4] "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403. "All evidence offered by the parties is 'prejudicial' to some extent, but the fear of prejudice does not generally render the evidence inadmissible." *People v Mills*, 450 Mich 61, 75; 537 NW2d 909 (1995). MRE 403 prohibits the admission of marginally probative evidence that will likely be given undue weight—that is, "evidence which is minimally damaging in logic will be weighed by the jurors substantially out of proportion to its logically damaging effect." *Id*. at 75-76 (quotation marks and citation omitted).

174, 195; 891 NW2d 255 (2016) ("While the acts occurred some years apart, given how similar the acts are, the temporal divide between their occurrences, standing alone, does not preclude the evidence's admission."). DB's testimony solely regarded a single act and there was no evidence of intervening acts between the assault of DB and the instant offenses. On the other hand, the testimony supporting the occurrence of the other act was reliable, as it came from DB herself, and there was a need, though not absolute, for evidence beyond TA's testimony, considering that there was no supporting physical evidence nor were there any corroborating eyewitnesses.

The probative value of the testimony was significant, not just marginally probative, where it tended to show defendant's predatory interest in young girls and propensity to touch them in an inappropriate sexual manner, thereby lending credibility to TA's allegations. The trial court's decision to admit the testimony fell within the range of reasonable and principled outcomes. Although the evidence was prejudicial, it was not unfairly so, and the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. The trial court did not abuse its discretion in allowing the admission of DB's testimony.

## V. PROPORTIONALITY AND CRUEL AND UNUSUAL PUNISHMENT

Defendant next argues that his 25-year minimum sentences for the CSC I convictions were disproportionate and a violation of his constitutional protections against cruel and unusual punishment. A minimum sentence of at least 25 years is mandated for the offense of CSC I when the victim is under 13 years old and the perpetrator of the sexual penetration is 17 years of age or older. MCL 750.520b(2)(b). We review de novo as an issue of law whether there has been a violation of the protection against cruel and/or unusual punishment. *People v Benton*, 294 Mich App 191, 203; 817 NW2d 599 (2011). But because the issue was unpreserved, our review is for plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763-764.

The Eighth Amendment to the United States Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." Article 1, Section 16, of the Michigan Constitution states that "[e]xcessive bail shall not be required; excessive fines shall not be imposed; cruel or unusual punishment shall not be inflicted; nor shall witnesses be unreasonably detained." If a particular punishment is not cruel or unusual under our state constitution, then it necessarily passes muster under the federal constitution. *Benton*, 294 Mich App at 204. "[W]hether a penalty may be considered cruel or unusual is to be determined by a three-pronged test that considers (1) the severity of the sentence imposed and the gravity of the offense, (2) a comparison of the penalty to penalties for other crimes under Michigan law, and (3) a comparison between Michigan's penalty and penalties imposed for the same offense in other states." *Id.*, citing *People v Bullock*, 440 Mich 15, 33-34; 485 NW2d 866 (1992).

Under the Michigan Constitution, the prohibition against cruel or unusual punishment bars the imposition of grossly disproportionate sentences. *Bullock*, 440 Mich at 32.[5] The

---

[5] We note that there is a distinction between "proportionality" as it relates to the constitutional protection against cruel or unusual punishment, with such proportionality being presumed when a

proportionality test requires inquiry into whether the punishment is so excessive that it is completely unsuitable in relation to the crime. *People v Hallak*, 310 Mich App 555, 572; 873 NW2d 811 (2015), rev'd in part on other grounds 499 Mich 879 (2016). The *Hallak* panel observed:

> The goal of rehabilitation is . . . a consideration. If the punishment thwarts the rehabilitative potential of the individual offender and does not contribute toward society's efforts to deter others from engaging in similar prohibited behavior, it may be deemed excessive. However, the need to prevent the individual offender from causing further injury to society is an equally important consideration. In the end, a penalty that is unjustifiably disproportionate to the crime or unusually excessive should be struck down as cruel or unusual. [*Hallak*, 310 Mich App at 572 (quotation marks and citations omitted).]

"If a statute mandates a minimum sentence for an individual sentenced to the jurisdiction of the department of corrections, the court shall impose sentence in accordance with that statute," and "[i]mposing a mandatory minimum sentence is not a departure . . . ." MCL 769.34(2)(a). "Legislatively mandated sentences are presumptively proportional and presumptively valid." *People v Brown*, 294 Mich App 377, 390; 811 NW2d 531 (2011). And proportionate sentences do not constitute cruel or unusual punishment. *People v Powell*, 278 Mich App 318, 323; 750 NW2d 607 (2008). A defendant can only overcome the presumption by presenting unusual circumstances that would render a presumptively proportionate sentence disproportionate. *People v Bowling*, 299 Mich App 552, 558; 830 NW2d 800 (2013). "[S]tatutes are presumed to be constitutional and must be so construed unless their unconstitutionality is readily apparent." *People v Russell*, 266 Mich App 307, 310; 703 NW2d 107 (2005) (quotation marks and citation omitted).

Employing the three-pronged test from our Supreme Court's decision in *Bullock*, cited above, the panel in *Benton*, 294 Mich App at 203-207, held that the 25-year minimum sentence imposed on the defendant under MCL 750.520b(2)(b), which is the provision at issue here, did not constitute cruel or unusual punishment. We are bound by *Benton*. MCR 7.215(J)(1). Here, to the extent that defendant's constitutional challenge is an "as-applied" challenge and assuming that further review is appropriate, the 25-year minimum sentences were not cruel or unusual.[6] This case stems from accusations that defendant repeatedly rubbed TA's thighs and buttocks and watched her in the shower. These actions ultimately led to defendant's placing his penis on the child's mouth and later his committing both sodomy and penile-vaginal penetration. Under those

---

sentence is within the guidelines range, and "proportionality" as it relates to reasonableness review of a sentence, which is not constitutional in nature. *Bullock*, 440 Mich at 34 n 17.

[6] For a facial challenge, a "defendant has the onerous burden to prove that there is no set of circumstances under which the statute is valid." *Hallak*, 310 Mich App at 567. "While the facial-challenge standard is extremely rigorous, an as-applied challenge is less stringent and requires a court to analyze the constitutionality of the statute against a backdrop of the facts developed in the particular case." *Id.*

circumstances, a 25-year minimum sentence can in no way be defined as grossly disproportionate.[7] Defendant certainly did not present evidence of unusual circumstances that would render the presumptively-proportionate sentence of 25 years disproportionate, and we find no constitutional violation.

We also reject defendant's argument that the 25-year minimum sentences were not proportional, which we are treating as an argument unassociated with any constitutional protections. Although the minimum sentence guidelines range was 51 to 170 months for the CSC I offenses and the 25-year minimum sentences exceeded the top end of that range, imposition of a mandatory minimum sentence under a statute, as noted earlier, does not constitute a departure from the guidelines. MCL 769.34(2)(a). Our Supreme Court in *People v Milbourn*, 435 Mich 630, 661; 461 NW2d 1 (1990), observed that "[j]ust as the guidelines may not be a perfect embodiment of the principle of proportionality, so too may a sentence within the guidelines be disproportionately severe . . . ." In light of the circumstances surrounding the offenses, which included defendant's sodomizing a child under age 13, and considering the circumstances surrounding the offender— defendant has 11 prior misdemeanor and 4 prior felony convictions, the 25-year minimum sentences were proportional. *Id.* at 636.[8] The sentences were not disproportionality severe.

VI. PSIR ACCURACY

---

[7] We conclude that the circumstances were more egregious than those in *Benton*, which entailed the following situation:

> According to the victim, he and defendant progressed from hugging, to holding hands, to kissing, before eventually engaging in sexual intercourse. The victim testified that he and defendant had sexual intercourse on two different evenings in October 2007. After the second incident, the victim called defendant from his home and inadvertently recorded the call. During the recorded call, the victim referred to defendant as his girlfriend and stated that he was proud to be involved with a grown woman. The victim's mother heard the recording and reported it to the school. The school board later terminated defendant from her teaching position and that decision was upheld by the tenure commission. [*Benton*, 294 Mich App at 194-195.]

[8] With respect to defendant's assertion that the trial court essentially gave him a life sentence when defendant's age is taken into consideration, our Supreme Court in *People v Lemons*, 454 Mich 234, 258-259; 562 NW2d 447 (1997), noted:

> [W]e find no basis . . . for a requirement that the trial judge tailor every defendant's sentence in relationship to the defendant's age. Persons who are sixty years old are just as capable of committing grievous crimes as persons who are twenty years old. We find no principled reason to require that a judge treat similar offenses that are committed by similarly depraved persons differently solely on the basis of the age of the defendant at sentencing where the Legislature has authorized the judge to impose life or any term of years.

Defendant argues that his PSIR should be corrected. The "Department of Corrections makes critical decisions concerning a defendant's status on the basis of information contained in the PSIR," and thus "the PSIR should accurately reflect any determination the sentencing judge has made regarding the accuracy or relevance of its information." *People v Waclawski*, 286 Mich App 634, 689-690; 780 NW2d 321 (2009). Defendant challenges the following statement in the PSIR: "Juvenile Record: Yes." He claims that he has no juvenile record. The prosecution agrees that the PSIR should be corrected. When, as here, "the trial court did not rely on the challenged information in the PSIR in sentencing defendant, resentencing is not required; rather, the remedy is to remand for the limited purpose of correcting the PSIR." *People v Spanke*, 254 Mich App 642, 650; 658 NW2d 504 (2003), overruled in part on other grounds by *People v Barrera*, 500 Mich 14, 17; 892 NW2d 789 (2017). Accordingly, this case must be remanded for the ministerial task of correcting the statement in the PSIR regarding defendant's juvenile record.

We affirm but remand for the ministerial task of correcting the PSIR. We do not retain jurisdiction.

/s/ James Robert Redford
/s/ Jane E. Markey
/s/ Mark T. Boonstra

-11-