PEOPLE v ALDERETE

Docket No. 68001. Submitted December 14, 1983, at Detroit.—Decided February 21, 1984.

Walter Alderete was convicted of cruelty to children by a jury in Wayne Circuit Court and was sentenced, Roland L. Olzark, J. Defendant appeals. *Held:*

1. Contrary to defendant's argument, the trial court did not err in failing to instruct the jury on a requisite state of mind or intent which is necessary to support a conviction of the charged offense. The trial court gave the standard jury instruction for the charge and that instruction accurately states the law. A wrongful mental attitude is not required in order to sustain a conviction under the child cruelty statute. Furthermore, if malice or an evil intent were a necessary element of the offense of child cruelty, there is ample evidence to indicate such intent on the part of defendant.

2. Defendant's assertion that he was denied effective assistance of counsel is rejected.

Affirmed.

1. APPEAL — JURY INSTRUCTIONS — CRIMINAL JURY INSTRUCTIONS.

The use of standard criminal jury instructions by a court, while not mandated, will be upheld on appeal if the instructions accurately state the law.

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error § 891.
75 Am Jur 2d, Trial § 610.
[2-4] 6 Am Jur 2d, Assault and Battery § 47.
59 Am Jur 2d, Parent and Child §§ 24, 40.
Criminal liability for excessive or improper punishment inflicted on child by parent, teacher, or one in loco parentis. 89 ALR2d 396.
[5-7] 21A Am Jur 2d, Criminal Law §§ 984, 985.
Circumstances giving rise to prejudicial conflict of interests between criminal defendant and defense counsel—state cases. 18 ALR4th 360.
Modern status of rules and standards in state courts as to adequacy of defense counsel's representation of criminal client. 2 ALR4th 27.

2. CRIMINAL LAW — CHILD CRUELTY — INTENT.

Malice or evil intent on the part of a defendant is not required in order to sustain a conviction under Michigan's child cruelty statute (MCL 750.136; MSA 28.331).

3. PARENT AND CHILD — DISCIPLINE.

A parent who acts in good faith with an honest belief that a given discipline is done for the benefit of the child will not be subjected to judicial intervention; however, a showing that the punishment was cruel and unreasonably severe will negate any claim of good faith on behalf of the parent.

4. CRIMINAL LAW — CHILD CRUELTY — CORPORAL PUNISHMENT — INTENT.

An unreasonable and severe corporal punishment, irrespective of the defendant's "evil mind" or lack of malice, will sustain a conviction under Michigan's child cruelty statute (MCL 750.136; MSA 28.331).

5. CRIMINAL LAW — ATTORNEY AND CLIENT — ASSISTANCE OF COUNSEL.

The test for effective assistance of counsel requires that defense counsel perform at least as well as a lawyer with ordinary skills and training in the criminal law and conscientiously act to protect his client's interests undeflected by conflicting considerations; ineffectiveness of counsel may be shown where defense counsel makes a serious mistake but for which the defendant would have had a reasonably likely chance of acquittal.

6. CRIMINAL LAW — ATTORNEY AND CLIENT — ASSISTANCE OF COUNSEL — BURDEN OF PROOF.

A defendant who attacks the adequacy of his representation must prove his claim and, to the extent that it depends on facts not of record, it is incumbent on the defendant to make a testimonial record or move for a new trial.

7. CRIMINAL LAW — ATTORNEY AND CLIENT — ASSISTANCE OF COUNSEL — BURDEN OF PROOF.

A reviewing court must be mindful of the principles that trial counsel is presumed to have afforded his client effective representation and that the burden of proving ineffectiveness of counsel is on the defendant.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William L. Cahalan,*

Prosecuting Attorney, *Edward Reilly Wilson,* Deputy Chief, Civil and Appeals, and *Rosemary A. Gordon,* Assistant Prosecuting Attorney, for the people.

*Mark Ellis,* for defendant on appeal.

Before: DANHOF, C.J., and ALLEN and M. E. DODGE,* JJ.

ALLEN, J. Following a jury trial, defendant was convicted of cruelty to children, MCL 750.136; MSA 28.331, and was sentenced to five years probation with the first year to be served in the Detroit House of Correction. He appeals as of right and we affirm.

The incident giving rise to this prosecution occurred on October 24, 1981. At that time the victim, daughter of defendant's girlfriend, was 22 months old. The girlfriend and her daughter had lived with defendant on a previous occasion but had only recently moved back in with defendant in September of 1981.

On October 24, 1981, the child's mother left for work, leaving the child in defendant's care. Defendant fell asleep and woke to find that the child had defecated and had smeared feces over herself and throughout the bathroom. Defendant removed the child's clothing, spanked her several times on the buttocks causing them to turn "crimson", placed his hands around her torso shaking her several times and then began to bathe the child. Apparently as the child attempted to exit from the bathtub, she fell striking her head against the edge, causing her to submerge beneath the water. Defendant grabbed her right arm and pulled the

---

* Circuit judge, sitting on the Court of Appeals by assignment.

child out of the bathtub. The child sustained facial bruises, an injury to her right arm and elbow, and bruises on her buttocks and chest area.

The child's mother sought medical attention two days later for the injury to the child's arm. The examining physician testified that there was no fracture but that the child had a soft tissue injury. He did not conduct an examination of the child's lower body. A later examination of the child, conducted on November 2, 1981, revealed the existence of two fractures in the upper right arm. Testimony indicated that the fractures occurred at different times. Bruises on the child's face, chest, back, and lower extremities were also noted. Testimony illustrated that the child was small and thin for her age and one physician characterized the child as "undersized".

The facts stated above were not contested at trial. The issue at trial revolved around the interpretation of those facts. Defense counsel argued that, while there was evidence of child abuse on someone's part, the defendant was not responsible for the child's ill and malnourished condition. The defense theory was that, due to the child's malnourished condition, her arm broke easily as defendant pulled her from the bathtub and she also bruised easily due to her malnourished state. Thus, defendant argues, had this child been a normal, healthy, unabused child, the consequences of his actions would not be a crime.

Defendant first argues that the trial court failed to instruct the jury on the requisite state of mind or intent which is necessary to support a conviction of the charged offense. He claims that "malice" or an evil state of mind, which is indicative of a discipline foreign to the corrective process and not accompanied by good faith, is an essential

element of child cruelty. The issue raised is of first impression. If defendant is correct, failure to so instruct the jury constitutes reversible error, notwithstanding the fact that no objection was made to its omission. We disagree.

The child cruelty statute, MCL 750.136; MSA 28.331, provides in part:

> "Any parent or guardian or person under whose protection any child may be, who cruelly or unlawfully punishes, or wilfully, unlawfully or negligently deprives of necessary food, clothing or shelter, or who wilfully abandons a child under 16 years of age, or who habitually causes or permits the health of such child to be injured, his or her life endangered by exposure, want or other injury to his or her person, or causes or permits him or her to engage in any occupation that will be likely to endanger his or her health, or deprave his or her morals or who habitually permits him or her to frequent public places for the purpose of begging or receiving alms, or to frequent the company of or consort with reputed thieves or prostitutes, or by vicious training depraves the morals of such child, shall, upon conviction, be deemed guilty of a felony."

Although several different acts or omissions are included within the statute, defendant was informed against based on a theory of cruel or unlawful punishment. Thus, our discussion is limited to that specific statutory provision.

The trial judge gave the following instruction on the elements of the charged offense.

> "Now the defendant is charged with cruelty to a child. And the defendant pleads not guilty.
> "To establish this charge the prosecution must prove each of the following elements beyond a reasonable doubt:
> "First, that the defendant was at the time a person who is responsible for the protection of the child, * * *.

"Second, that the defendant punished this child in a cruel or unlawful manner. It is for you to determine whether or not the punishment inflicted in this case amounts to cruel or unlawful punishment.

"In making that determination you should consider the following factors:

"A person who is responsible for the protection of a child has the right to use reasonable discipline including the right to spank or physically punish a child.

"Second, if a child is whipped, beaten or physically punished with excessive severity, this amounts to cruelty.

"And, third, it is not necessary, however, that there be permanent injury or that the child be maimed or disfigured or his or her life endangered."

Although it appears that trial counsel was unaware of the existence of a standard jury instruction on this charge, we note that the instruction given by the court is a verbatim rendition of CJI 17:8:01. Although use of the standard criminal instructions is not mandated, their use will be upheld if the instruction accurately states the law. See *People v Doss,* 122 Mich App 571; 332 NW2d 541 (1983). We find no error in the jury instruction.

While it appears that some jurisdictions have held that a wrongful mental attitude is required in order to sustain a conviction under the applicable child abuse or child cruelty statute, see 1 ALR4th 38, no Michigan case has adopted that approach and we decline to follow that position. The Michigan statute provides that one who "cruelly or unlawfully punishes" a child under their protection is guilty of the felony offense of child cruelty. We do not find that language to require a showing of malice, as defined by defendant, nor do we find case authority to support that contention.

In an early case involving an assault and bat-

tery committed by a parent upon a child, the Supreme Court discussed the limits upon a parent's ability to correct and discipline a child through corporal punishment. While the Court recognized the unquestioned right of a parent to administer reasonable and timely punishment, the Court acknowledged that such right was not unlimited. *People v Green,* 155 Mich 524; 119 NW 1087 (1909). A parent who acts in good faith with an honest belief that the given discipline is done for the benefit of the child will not be subjected to judicial intervention. However, a showing that the punishment was cruel and unreasonably severe will negate any claim of good faith on behalf of the parent. *Green, supra,* pp 532-533.

In *People v Loomis,* 161 Mich 651; 126 NW 985 (1910), the Supreme Court adopted the language set forth in *Green* as the appropriate definition of cruel or unlawful punishment in cases of child cruelty. Thus, an unreasonable and severe corporal punishment, irrespective of the defendant's "evil mind" or lack of malice, will sustain a conviction under the statute. Defendant's claim that excessive corporal punishment alone will never justify imposition of criminal responsibility is without merit. As noted in *Green, supra,* and *People v Leonard,* 81 Mich App 86; 264 NW2d 130 (1978), the beating itself may negate any good faith argument and illustrate that the punishment inflicted was beyond the scope of reasonable discipline.

In the present case, the record reveals that defendant did not contest the fact that the child's arm was broken or that her body was bruised following the incident on October 24, 1981. Defendant himself admitted spanking the child until her buttocks turned crimson and further hypothesized

that the bruises on her torso were the marks left by his fingers and thumbs. Medical testimony and photographic evidence presented at trial illustrated the nature and extent of the various injuries to the 22-month-old child. Even were we to adopt defendant's argument that malice or an evil intent is a necessary element of the offense, there is ample evidence to indicate a mean or evil intent on the part of defendant.

Next, defendant asserts that he was denied the effective assistance of counsel in three respects: (1) counsel failed to interview witnesses in preparation for trial, (2) counsel failed to cross-examine prosecution witnesses and failed to examine defendant when he took the stand, and (3) counsel failed to inform the jury of the requisite state of mind for conviction of the charged offense. The test for effective assistance of counsel requires that defense counsel perform at least as well as a lawyer with ordinary skills and training in the criminal law and conscientiously act to protect his client's interests undeflected by conflicting considerations. *People v Garcia,* 398 Mich 250; 247 NW2d 547 (1976). Ineffectiveness of counsel may also be shown where defense counsel makes a serious mistake but for which defendant would have had a reasonably likely chance of acquittal. *People v DeGraffenreid,* 19 Mich App 702; 173 NW2d 317 (1969).

Defendant's first claim of inadequate representation alleges a lack of trial preparation including a failure to contact and interview witnesses prior to the day set for trial. As stated in *People v Ginther,* 390 Mich 436; 212 NW2d 922 (1973), a defendant who attacks the adequacy of his representation must prove his claim and, to the extent that it depends on facts not of record, it is incumbent on

the defendant to make a testimonial record or move for a new trial. The record is devoid of any evidence substantiating this claim. Thus, meaningful appellate review is precluded.

Next, defendant claims that counsel's failure to cross-examine several prosecution witnesses and to examine defendant himself constitutes ineffective assistance of counsel. A reviewing court must be mindful of the principles that trial counsel is presumed to have afforded his client effective representation, *People v Tranchida,* 131 Mich App 446; 346 NW2d 338 (1984), and that the burden of proving ineffectiveness of counsel is on the defendant. *Ginther, supra.*

In the present case, defense counsel did not cross-examine several prosecution witnesses, including the victim's father, grandmother, mother, or the officer who accompanied the DSS worker to the home. Given the presumption that conduct at trial is presumed to be taken in pursuance of a permissible trial strategy, we discern that counsel's actions were consistent with the proffered defense and part of a reasonable trial stretegy. The limited nature of cross-examination may well have been due to the fact that those witnesses had no direct knowledge of the circumstances of the October 24, 1981, incident and their testimony was limited to facts which defendant did not contest: the existence and appearance of the child's injuries. Mindful of the nature of the charge, defense counsel may well have attempted to avoid needless repetition of testimony concerning the type, placement, and degree of the injuries. We cannot say that an attorney with ordinary training and skill in criminal law would have acted differently than did trial counsel in the present case or that counsel's action in not cross-examining these witnesses

amounted to a serious mistake but for which defendant would have had a reasonably likely chance of acquittal.

Trial counsel's failure to examine defendant poses a somewhat different situation, yet we do not find that counsel performed in an ineffective manner. The exchange between trial counsel and defendant when defendant took the stand leads us to the reasonable inference that counsel was opposed to defendant's testifying in his own behalf. While trial counsel might be advised that a better course of conduct may have been to make a separate record clearly identifying the difference in opinion or conflict, we do not find that omission to constitute ineffective representation. The decision to call or not call the defendant to testify is a matter of trial strategy. *People v Viaene,* 119 Mich App 690; 326 NW2d 607 (1982); *People v Grant,* 102 Mich App 368; 301 NW2d 536 (1980), *lv den* 411 Mich 1049 (1981). While counsel has the obligation to defend his client competently and zealously, it appears that defendant decided to take the stand against the advice of counsel, after being informed of the fact that he would be subject to cross-examination by the prosecutor. Indeed, defendant stated that he felt his testimony was "imperative" to his defense. As defendant does not argue or allege that he was in any way misinformed by trial counsel concerning the repercussions of his act of taking the stand or that he was in any way given erroneous information by counsel, we fail to find that defense counsel performed inadequately or made a serious mistake.

Defendant's final claim of ineffective assistance of counsel centers on counsel's alleged failure to inform the jury of the requisite mental element of malice necessary to sustain a conviction of the

charged offense and the failure of counsel to make certain objections at trial. We have discussed the substantive merits of the "malice" argument in an earlier portion of this opinion and found it to be without merit. Thus, this secondary attack must also fail. We have reviewed defendant's other claims and found them to be insufficient to support a claim of ineffectiveness of counsel. Counsel's failure to object to admissions of the defendant in a taped statement or to comments by the prosecutor in his opening statement does not amount to a serious mistake but for which defendant would have had a reasonably likely chance of acquittal. The statements were not so prejudicial that introduction would have denied defendant a fair trial and, given the quantity of evidence pointing to defendant's guilt in addition to his own admissions, we find no error.

We have reviewed defendant's allegations of error and found none which require reversal. Thus, we affirm defendant's conviction and sentence.