*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
April 11, 2024

Plaintiff-Appellee,

v

No. 360171
Saginaw Circuit Court

JUMAANE AMUNRA JONES,

LC No. 20-046833-FH

Defendant-Appellant.

Before: LETICA, P.J., and CAVANAGH and SWARTZLE, JJ.

PER CURIAM.

Defendant appeals by right his jury convictions on two counts of third-degree child abuse, MCL 750.136b(5). Defendant was sentenced, as a fourth-offense habitual offender, MCL 769.12, to serve concurrent terms of 3 to 15 years' imprisonment. We affirm defendant's convictions and sentences.

## I. FACTUAL BACKGROUND

Defendant's two children, JJ and RJ, began living with defendant in the summer of 2018. Although defendant's ex-girlfriend and JJ testified that things were good at first, at trial, defendant's ex-girlfriend and the children testified that their situation steadily went downhill, with the children receiving "whoopings."[1] After a whooping, JJ observed that RJ's back was filled with scars. Both JJ and RJ testified about an incident during which each of them had been made to stand in the hallway while the other was made to take off their clothes[2] and then were struck with a belt multiple times. Defendant's ex-girlfriend and JJ also testified that defendant slapped and punched JJ, and defendant's ex-girlfriend and both children testified that defendant pinched RJ. RJ testified at trial that she still had a mark on her leg from where defendant had pinched her.

---

[1] JJ testified that a whooping involved being struck with defendant's hand or a belt.

[2] JJ testified that he stripped to his underwear, but defendant testified that he pulled down JJ's pants and denied that JJ was forced to remove his clothing.

In January 2019, defendant's ex-girlfriend—who had been forbidden from disciplining the children and was instructed to tell defendant when they behaved poorly—took a video of JJ being disrespectful toward her. After she showed the video to defendant, he whooped the children. JJ testified that the incident was like the last incident, in which he and RJ had been whooped in the bedroom, but that they were struck fewer times. Sometime later, defendant's ex-girlfriend went to a gas station, where she called the police and asked them to conduct a wellness check on the children. Officers testified that there were visible bruises on the children, and the officer who interviewed RJ testified that she had scarring on her legs. When a lieutenant questioned defendant about the children's injuries, defendant stated that the children had been acting up and that he had whooped them, but that he had not seen injuries and that the whooping had not been excessive.

Defendant testified at trial that he whooped the children but that he did so only for the purposes of discipline after other methods of discipline did not work. He testified that he had not been trying to injure the children or "put pain on anybody." Despite testifying that he did not think that he hit them "hard" enough "to leave a mark on them," defendant recognized that the children had welts, marks, and injuries after he struck them with a belt. Both defendant and defendant's father testified that that was the method defendant was disciplined with when he was a child. Defendant denied punching JJ or putting his hands around JJ's throat. He stated that he had "popped" the children on their arms or legs but never slapped, punched, pinched, or threatened them. Defendant argued that his ex-girlfriend only called the police after he spent two nights at a strip club and that most of the abuse allegations arose after the children were subjected to the influence of their mother.

The trial court instructed the jury that one charge of child abuse related to JJ and the other related to RJ. It instructed the jury that the prosecutor was required to prove beyond a reasonable doubt that the crimes occurred "between June 25, 2018 and September 24, 2019, within Saginaw County." The court also instructed the jury that the prosecution had introduced evidence of other acts of domestic violence, but the jury was only to consider them when deciding whether defendant committed the offenses for which he was on trial. The jury found defendant guilty as previously described, but acquitted him of a charge of assault by strangulation.

## II. VAGUENESS

Defendant argues that the third-degree child abuse statute is unconstitutionally vague because, by failing to define what force is "reasonable," it does not provide fair notice about what conduct is proscribed. Defendant also argues that this lack of definition leads to unlimited discretion on the part of the finder of fact. We disagree with both arguments.

As an initial matter, defendant has not preserved this issue. A challenge to the constitutionality of a statute is unpreserved unless the defendant raised the challenge before the trial court. *People v Lawhorn*, 320 Mich App 194, 197 n 1; 907 NW2d 832 (2017). Generally, this Court reviews de novo issues regarding the constitutionality of a statute. *People v Douglas*, 295 Mich App 129, 135; 813 NW2d 337 (2011). However, this Court reviews unpreserved claims of constitutional error for plain error affecting a party's substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). An error is plain if it is clear or obvious, and it affects substantial rights if it affected the outcome of the lower court proceedings. *Id*.

-2-

The void-for-vagueness doctrine is derived from the Due Process Clauses of the Fourteenth Amendment and Const 1963, art 1, § 17, which guarantee that the state may not deprive a person of life, liberty, or property without due process of law. *People v Roberts*, 292 Mich App 492, 497; 808 NW2d 290 (2011). See also *Grayned v City of Rockford*, 408 US 104, 108-109; 92 S Ct 2294; 33 L Ed 2d 222 (1972). " 'It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined.' " *Lawhorn*, 320 Mich App at 198, quoting *Grayned*, 408 US at 108-109. A penal statute is unconstitutionally vague if (1) it does not provide fair notice of the proscribed conduct, (2) it encourages arbitrary or discriminatory enforcement, or (3) its coverage is overbroad and impinges on First Amendment freedoms. *Roberts*, 292 Mich App at 497.

A statute does not provide fair notice of the proscribed conduct when persons of ordinary intelligence might speculate about the statute's meaning or differ in their applications. *Lawhorn*, 320 Mich App at 200. Fair notice exists when the statute's meaning can be determined by considering judicial interpretations, common law, dictionaries, treatises, or the common meanings of words. *Id*. However, the words used in a statute are not required to have a single meaning or define an offense with "mathematical certainty." *Id*. (quotation marks and citation omitted). Even if a statute may be vague in theory, it is sufficiently definite when the defendant's conduct falls within that prohibited by the properly construed statute. *Id*.

We conclude that the third-degree child abuse statute provides fair notice of the conduct prohibited when applied to the facts of defendant's case. The definition of "reasonableness" can easily be determined by considering judicial interpretations and dictionaries.

> A person is guilty of child abuse in the third degree if any of the following apply:
>
> (a) The person knowingly or intentionally causes physical harm to a child.
>
> (b) The person knowingly or intentionally commits an act that under the circumstances poses an unreasonable risk of harm or injury to a child, and the act results in physical harm to a child. [MCL 750.136b(5).]

"This section does not prohibit a parent or guardian, or other person permitted by law or authorized by the parent or guardian, from taking steps to reasonably discipline a child, including the use of reasonable force." MCL 750.136b(9). In *People v Gregg*, 206 Mich App 208, 212-213; 520 NW2d 690 (1994), this Court rejected a similar argument that MCL 750.136b is overly broad because it does not define "reasonable force." We reasoned that the term "reasonable" is easily ascertained by consulting dictionaries. *Id*. at 213. Accordingly, the meaning of this phrase is easy to ascertain by consulting dictionaries and current caselaw.

Further, defendant's as-applied challenge fails because a defendant's action of beating a child with a belt causing scars clearly falls within the conduct that MCL 750.136b(5) prohibits. See *Lawhorn*, 320 Mich App at 204. Regardless of whether the punches, slaps, and pinches constituted reasonable force, JJ and RJ both testified that defendant struck them with a belt, and multiple witnesses—including the doctor who evaluated the children's injuries in January 2019—testified about the bruises that had resulted. Even setting aside the children's graphic descriptions

of their beatings, the force that defendant used fell within the definition of force that was not fair, proper, or moderate.

Defendant's argument that the third-degree child abuse statute's lack of definitions may lead to arbitrary and discriminatory enforcement also lacks merit. A criminal statute is required to provide standards for its enforcement and administration to guard against arbitrary and discriminatory enforcement. *Id*. at 203. Scienter requirements alleviate vagueness concerns. *Id*. MCL 750.136b includes scienter requirements that provide sufficient standards that prevent the statute from being applied in a subjective manner. *Id*.

## III. REASONABLE-FORCE INSTRUCTION

The child abuse statute "does not prohibit a parent . . . from taking steps to reasonably discipline a child, including the use of reasonable force." MCL 750.136b(9). Defendant argues that defense counsel provided ineffective assistance by intending to request an instruction on the definition of "reasonable force," but then failing to do so in timely fashion. During the remand hearing before the trial court, appellate counsel suggested the following language: "[G]iven all the facts known to [defendant] at the time . . . , the force must have been objectively reasonable under the circumstances and the amount of force necessary for [defendant] to exercise his right to discipline his children."[3]

A criminal defendant has a fundamental right to the effective assistance of counsel. US Const, Am VI; Const 1963, art 1, § 20; *United States v Cronic*, 466 US 648, 654; 104 S Ct 2039; 80 L Ed 2d 657 (1984).

> The Sixth Amendment right to counsel exists, and is needed, in order to protect the fundamental right to a fair trial. The Constitution guarantees a fair trial through the Due Process Clauses, but it defines the basic elements of a fair trial largely through the several provisions of the Sixth Amendment, including the Counsel Clause. [*Strickland v Washington*, 466 US 668, 684-685; 104 S Ct 2052; 80 L Ed 2d 674 (1984).]

"In order to obtain a new trial, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a

---

[3] We note that the trial court partially erred in its opinion and order denying defendant's motion for a new trial when it found that "the defense has not provided a specific instruction on the use of 'reasonable force' in relation to the child abuse charges made under MCL 750.136b(9) – either at the time of trial or for this motion." In addition to specifically proposing language at the hearing, in the motion for new trial, appellate counsel suggested "asking the jury to determine whether the use of force of [sic? was] reasonable under the circumstances, given all the facts known to [defendant] at the time." And counsel further proposed that the court should have instructed the jury that "reasonable force [was] physical force [that was] objectively reasonable under the circumstances and the amount of force necessary to [sic] for [defendant] to exercise his right to discipline his children."

reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012).

The defendant must overcome the strong presumption that defense counsel's performance constituted sound trial strategy. *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012). However, "a court cannot insulate the review of counsel's performance by calling it trial strategy." *Trakhtenberg*, 493 Mich at 52. Counsel always has the duty to make reasonable investigations and exercise professional judgment in matters related to the defense. *Id*. at 52-53. We must objectively consider whether counsel's "acts or omissions were outside the wide range of professionally competent assistance." *Id*. When considering an ineffective-assistance claim, we consider the possible reasons for counsel's actions. *Id*.

Defense counsel may provide ineffective assistance by failing to be prepared for trial. See *People v Caballero*, 184 Mich App 636, 640; 459 NW2d 80 (1990). Counsel may also provide ineffective assistance by failing to comply with the procedural rules necessary to raise a claim. See *Buck v Davis*, 580 US 100, 126; 137 S Ct 759; 197 L Ed 2d 1 (2017) (concerning whether counsel may have provided ineffective assistance by failing to follow the procedure necessary to raise a claim); *Hinton v Alabama*, 571 US 263, 273; 134 S Ct 1081; 188 L Ed 2d 1 (2014) (concerning whether counsel provided ineffective assistance by failing to follow the trial court's instruction to file a request for further funds to appoint a tool-mark-evidence expert).

In this case, on the second day of trial, the court asked the parties to provide their final instructions that day.[4] On the third day of trial, the parties discussed instructions pertaining to the assault-by-strangulation charge. On the fourth day of trial, defense counsel asked the trial court for an intent instruction to expand on the concept "that defendant either *knowingly* or intentionally caused physical harm to" RJ or JJ. See M Crim JI 17.21(4) (emphasis added). Counsel's request was based on his reading of the Institute of Continuing Legal Education's commentary on M Crim JI 17.21. Counsel explained that caselaw required the defendant to do more than commit "the act of spanking." Rather, defendant had to have "the right mental state to cause harm; physical harm to the child."[5] Counsel elaborated that he planned to marry the language of the third-degree child abuse statute with the discipline defense, demonstrating that defendant intended to discipline his

---

[4] The court had earlier entered a trial and scheduling order directing the parties to submit preliminary jury instructions before September 13, 2021, and that any requests for final jury instructions were due "*before* we begin the 2nd day of trial . . . ."

[5] In reviewing a challenge to the jury instructions for the first-degree child abuse statute, our Supreme Court held that the phrase knowingly or intentionally "require[d] more from [a] defendant than an intent to commit an act." *People v Maynor*, 470 Mich 289, 295; 683 NW2d 565 (2004). To establish the elements of first-degree child abuse, "[t]he prosecution must prove that [by the defendant's action], the defendant intended to cause serious physical or mental harm to the [child] or . . . knew that [such] harm would be caused by [the defendant's act]." *Id*. Thus, the statutory language was sufficient to inform the jury about the necessary elements and no specific intent instruction was required. *Id*. at 295-296.

children, not to knowingly and intentionally inflict physical harm upon them.[6]  After taking a recess, the trial court ruled that counsel could argue his understanding of the statutory language to the jury, but that it would provide the standard jury instructions, absent "some specific authority that supports [defense counsel's] request," at which time, the court would consider it.  The trial court added that it had not received such a request and that the jury instructions "were due previously."

Later on the fourth day of trial, after both parties had rested, the discussion about the final jury instructions continued.  Defense counsel pointed to the prosecutor's questions while cross-examining defendant to suggest that the prosecutor conflated defendant's action of spanking the children with the separate mental state required to commit third-degree child abuse.  The court repeated that the jury would be instructed on the elements of third-degree child abuse, the discipline exception, and that the lawyers' arguments were not evidence.  Defendant counsel then mentioned the discipline exception, opining that "there should be clarifying language as to the definition," but, before he could elaborate, the trial court asked what the clarifying language would be.  The trial court reiterated that counsel had been told "to submit something," but he had "submitted nothing ."  Furthermore, counsel failed to provide authority for his request, which the court would have considered had it been  provided timely.

The following day, the trial court instructed the jury, using the standard jury instruction for third-degree child abuse.  The trial court asked whether counsel had any objections to the instructions as read, and counsel offered one—that the child abuse counts specify which child was involved.

On this record, defendant has not established that counsel performed deficiently, as opposed to strategically, in failing to request a jury instruction further defining "reasonable force." *People v Thorne*, 322 Mich App 340, 347; 912 NW2d 560 (2017), quoting *People v Dunigan*, 299 Mich App 579, 584; 831 NW2d 253 (2013) (" 'Failing to request a particular jury instruction can be a matter of trial strategy.' ").  After conducting legal research, defense counsel sought to convince the jury that defendant acted solely to discipline his children, not to knowingly or

---

[6] During his opening statement, defense counsel twice said that a "parent who acts in good faith, with an honest belief that the given discipline is done for the benefit of the child will not be subject to judicial intervention."  This quotation came from *People v Alderete*, 132 Mich App 351, 357; 347 NW2d 229 (1984), which was decided when Michigan prohibited "cruelty to children." *Id*. at 353.  What defense counsel omitted was the following language: "However, a showing that the punishment was cruel and unreasonably severe will negate any claim of good faith on behalf of the parent." *Id*.  The prior standard jury instruction for this statute protected a parent's right to use reasonable discipline, including spanking or physically punishing a child. *Id*. at 356.  But, if a child was "whipped, beaten or physically punished with excessive severity," it was cruelty. *Id*. There was no requirement that "there be permanent injury or that the child be maimed or disfigured or his or her life endangered." *Id*., quoting CJI 17:8:01.  Regardless of defendant's lack of malice, excessive corporal punishment "may negate any good faith argument and illustrate that the punishment inflicted was beyond the scope of reasonable discipline." *Id*. at 357.

intentionally inflict physical injury upon them. Counsel's opening and closing arguments focused on this distinction. Counsel discussed trial testimony that he elicited from the children about defendant's disciplinary techniques and escalation. And counsel obtained testimony from defense witnesses that defendant was disciplined in the same manner when he was a child. Counsel further elicited testimony that other family members employed the same kind of discipline as defendant. Throughout the proceedings, defense counsel suggested that defendant acted reasonably given how he had been raised. Had counsel sought an instruction further defining "reasonable force," he would have highlighted that the standard by which defendant's acts were to be evaluated was objective, not subjective. See *Gregg*, 206 Mich App at 213.[7] For these reasons, counsel's performance was not deficient, but a matter of trial strategy.

Regardless, even assuming arguendo that trial counsel had performed deficiently, defendant has not established that he was prejudiced. During defendant's hearing under *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973), the trial court found that defendant was not denied the effective assistance of counsel when his attorney failed to make a timely request for a jury instruction regarding the definition of "reasonable force." It reasoned that the instructions, as given, fairly presented the issues to be tried to the jury and that there was no basis to find that counsel provided ineffective assistance. The court found that, for the purposes of his ineffective-assistance claims, defendant had not shown unfair prejudice or that there would have been a reasonable probability that the outcome would have been different but for an error by counsel.

We are not definitely and firmly convinced that the trial court's findings were mistaken. Although defense counsel forfeited defendant's instructional issue, the trial court found that the instructions that were given were sufficient. It did not err because, as previously discussed, the definition of "reasonable force" is easily ascertained by considering dictionary definitions of reasonableness. Further, the jury did not indicate any confusion, such as by sending out a question or note regarding the meaning of reasonableness.

Moreover, the evidence against defendant's claim of reasonable force in the exercise of parental discipline was strong. That evening, defendant's girlfriend, whom defendant had

---

[7] In *Gregg*, this Court relied upon the following dictionary definitions:

"Reasonable" is defined by Black's Law Dictionary (6th ed) as:

> Fair, proper, just, moderate, suitable under the circumstances. Fit and appropriate to the end in view. Having the faculty of reason; rational; governed by reason; under the influence of reason; agreeable to reason. Thinking, speaking, or acting according to the dictates of reason. Not immoderate or excessive, being synonymous with rational, honest, equitable, fair, suitable, moderate, tolerable.

The term is also defined in *The Random House College Dictionary, Revised Edition,* as:

> 1. agreeable to or in accord with reason or sound judgment; logical.
> 2. not exceeding the limit prescribed by reason; not excessive . . . .

instructed not to discipline his children, testified that they "were acting up." JJ was ten years old and RJ was seven years old. JJ "may have said that he didn't care about something, he was just going to be bad." Defendant's girlfriend recorded what occurred that evening.[8] Defendant testified that RJ, being younger than JJ, was a follower.

Although defendant denied being intoxicated on alcohol when he got home, he admitted that "he was probably high" on marijuana. After viewing the video recording in which JJ purportedly told defendant's girlfriend that he did not have to listen to her, defendant opted to whip both children with a belt for their disrespect and for failing to clean up.

The children testified that defendant woke them from their beds and directed them to disrobe.[9] Defendant testified that the children were awake and he described how he punished them individually after pulling down their pants before "spanking" them with a belt three or four times. However, JJ testified that defendant hit them with the belt more than four times, while RJ testified that defendant struck her "a lot." JJ described defendant as being angry and further testified that he screamed, cried, and told defendant to stop. Defendant said no and kept going. When it was RJ's turn, she also screamed and cried. And while defendant testified that he explained why he was disciplining them in this manner, the children testified that could not recall what defendant said.

Later, defendant's then-girlfriend made an early morning call to the police to report domestic violence and potential child abuse. When the police arrived at the home, they saw bruising on JJ's left forearm, inner left thigh, left leg, right calf, and right leg. One of the police officers saw scarring on RJ's legs along with bruising on the left side of her stomach as well as her wrists. The doctor documented bruising to RJ's left wrist, her left lower abdomen, her upper left thigh, her lower left thigh, her lower right leg, and the back of her right leg, just below the buttock. RJ also had "a few scratches on her abdomen." As to JJ, the doctor saw injuries to his left forearm, numerous injuries to his left leg, and injury to his right leg. Photographs of the children's injuries were admitted. The doctor testified that the photographs of seven-year-old RJ's injuries did not "quite do justice"; instead, he described them as "significant wounds."

Although defendant testified that he did not even realize there were marks on his children until the police told him, defendant was impeached with his prior testimony that the children had marks, welts, and injuries when he struck them with a belt. Defendant admitted to using a belt on the children on six occasions, two at the home, after he had custody of them. Defendant also denied that the injuries were permanent; however, he was again impeached with his prior testimony, recognizing that they were permanent, even though he claimed that he had not meant it like that.

Defendant's ex-girlfriend described numerous assaults defendant committed upon the children. She opined that defendant physically harmed both children, leaving marks.

---

[8] This recording was not presented during trial.

[9] JJ said that he stripped down to his underwear.

This Court has held that when a defendant beats a child with a belt, causing scars, a jury may reasonably conclude that the defendant knowingly or intentionally caused physical harm to the child "and that the force [the] defendant exerted in disciplining the victim exceeded that which would be reasonable . . . ." *People v Lawhorn*, 320 Mich App 194, 204; 907 NW2d 832 (2017). Given the strong evidence of defendant's infliction of numerous severe bruises on these young children by striking them with a belt for their misbehaviors and the trial court's instructions, defendant has not established that he was prejudiced by counsel's failure to request an additional instruction to define "reasonable force." See *Thorne*, 322 Mich App at 347-351.

## IV. SPECIAL UNANIMITY INSTRUCTION

Defendant contends that the trial court erred by failing to sua sponte instruct the jury that it must specifically agree on a single actus reus in order to convict him of third-degree child abuse. Alternatively, defendant contends that counsel was ineffective for failing to request a specific unanimity instruction given the trial testimony about numerous distinct acts defendant committed against the children. We disagree.

In general, questions of law involving jury instructions are reviewed de novo, and whether a trial court's decision concerning whether a jury instruction is applicable to the facts of a case is reviewed for abuse of discretion. *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006). Because defendant did not request a specific unanimity instruction, this issue is unpreserved. See *People v Heft*, 299 Mich App 69, 78; 829 NW2d 266 (2012) ("A defendant must raise an issue in the trial court to preserve it for [this Court's] review."). "This Court reviews unpreserved challenges to jury instructions for plain error affecting a party's substantial rights." *People v Everett*, 318 Mich App 511, 526; 899 NW2d 94 (2017) (quotation marks and citation omitted); see also MCL 768.29 ("The failure of the court to instruct on any point of law shall not be ground for setting aside the verdict of the jury unless such instruction is requested by the accused."). A plain error occurs if three requirements are "met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999), reh den 461 Mich 1205 (1999) (citation omitted). Even if the three requirements are met, "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763 (quotation marks, citation, and alteration omitted). "A criminal defendant is entitled to have a properly instructed jury consider the evidence against him." *Everett*, 318 Mich App at 527 (quotation marks and citation omitted).

In *People v Chelmicki*, 305 Mich App 58, 67-68; 850 NW2d 612 (2014), this Court explained:

> Michigan law provides criminal defendants the right to a unanimous jury verdict. MCR 6.410(B). "In order to protect a defendant's rights to a unanimous verdict, it is the duty of the trial court to properly instruct the jury regarding the unanimity requirement." *People v Cooks*, 446 Mich 503, 511; 521 NW2d 275 (1994). Often, the trial court fulfills that duty by providing the jury with a general instruction on unanimity. *Id*. at 512. However, a specific unanimity instruction may be required

in cases in which "more than one act is presented as evidence of the actus reus of a single criminal offense" and each act is established through materially distinguishable evidence that would lead to juror confusion. *Id*. at 512-513.

During its final instructions, the trial court provided the jury with a general unanimity instruction, stating: "A verdict in a criminal case must be unanimous. In order to return a verdict, it is necessary that each of you agrees on that verdict."

On appeal, defendant points to the prosecutor's closing argument as referencing other instances sufficient to support the third-degree child abuse charges. Regarding JJ, defendant contends that the prosecutor described defendant hitting JJ with a belt for failing to clean his room,[10] defendant hitting JJ's arms and legs, defendant punching and choking JJ in the backyard,[11] and defendant punching JJ for failing to do his homework.[12] Regarding RJ, defendant asserts that the prosecutor described defendant hitting RJ with a belt in the bedroom,[13] defendant hitting RJ with a belt in the car, and defendant hitting RJ with a belt for failing to do her homework.

The record reflects that the prosecution charged defendant with a single count of assault by strangulation and two counts of third-degree child abuse, one for JJ and one for RJ. The third-degree child abuse charges resulted from the incident where defendant struck JJ and RJ with a belt. The Information provided a timeframe of on or about June 25, 2018 through September 24, 2019.[14]

Before trial, the prosecution filed a motion to admit other acts evidence under MCL 768.27b and/or MRE 404(b), which the trial court granted in part. Relevant to this issue, the trial court allowed other-acts evidence involving incidents where defendant used a belt on the children, punched and/or hit the children in the face, stomach, or back, choked a child's neck, or pinched a child.[15]

Consistent with this ruling, during opening argument, defense counsel recognized that "[t]he two charges of child abuse stem from only one incident," which he referred to as "the spanking." In closing, defense counsel repeated that defendant was "charged with two counts of child abuse in the third degree." Defense counsel explained that defendant never denied spanking

---

[10] This was one of the reasons for defendant using a belt to hit JJ.

[11] These acts appear to be part of the assault by strangulation charge that the jury acquitted defendant of committing. Defendant denied choking JJ, putting his hands around JJ's throat, or "touch[ing] anywhere around [JJ's] neck."

[12] Defendant denied punching JJ.

[13] This appears consistent with defendant's use of a belt against RJ and JJ.

[14] The defendant's ex-girlfriend called the police on January 12, 2019; however, the charged timeframe encompassed defendant's time with his children.

[15] There was a separate motion to admit other-acts evidence arising from events involving defendant's ex-girlfriend.

his children. To the contrary, he admitted to spanking them "as a disciplinary measure," with a belt "three to four times." This was the incident involving both JJ and RJ.

Contrary to defendant's argument, in context, the prosecutor's closing argument about the third-degree child abuse charge focused on defendant's use of a belt during the incident that involved both JJ and RJ. This was the incident that defendant's ex-girlfriend reported to the police on January 12, 2019.

Moreover, even if the prosecutor's closing argument, which was not evidence, was read as defendant contends, he is not entitled to relief under the plain-error standard. Notably, the jury asked for and received the hospital photographs of the children and the examining doctor's report before returning its guilty verdict on the third-degree child abuse charges. Those photographs and that report documented the injuries the children suffered on or about January 12, 2019. Again, defendant did not deny using a belt to inflict those injuries, but claimed that he simply disciplined the children. Accordingly, defendant has not established that the trial court erred by failing to sua sponte provide the jury with a specific unanimity instruction.

Alternatively, defendant argues that trial counsel was ineffective for failing to object to the trial court's failure to provide a specific unanimity instruction. For the reasons just discussed, any objection would have been futile. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel."). Because defendant has not shown that his trial counsel performed deficiently or that he was prejudiced, *People v Muniz*, 343 Mich App 437, 448; 997 NW2d 325 (2022), the trial court properly denied his motion for a new trial.

## V. OTHER-ACTS EVIDENCE

Defendant argues that his rights were violated by the trial court's admission of evidence of his other acts of domestic violence. To preserve an issue for appeal, the defendant must raise it before the trial court at the time that the trial court has an opportunity to correct the error. *Pipes*, 475 Mich at 277. In this case, defendant challenged the admission of the other-acts evidence on the basis that the evidence was substantially more prejudicial than probative. However, raising an objection on a nonconstitutional ground is not sufficient to preserve a constitutional question for review. See *People v Hughes*, 506 Mich 512, 522-523; 958 NW2d 98 (2020). Defendant's related argument that MCL 768.27b is generally unconstitutional is not preserved.

First, defendant argues that the trial court erred by admitting evidence of other acts of domestic violence because the evidence was substantially more prejudicial than probative. The court did not err by admitting this highly relevant propensity evidence under MCL 768.27b despite its potential to prejudice defendant.

As an initial matter, defendant argues that the admission of other-acts evidence violated his right to a fair trial under the United States and Michigan Constitutions. The Michigan and United States Constitutions provide in part that no person shall be deprived of property without due process of law. US Const, Am XIV; Const 1963, art 1, § 17. Not every error violates a defendant's right to due process, and "[m]erely framing an issue as constitutional does not make it so." *People v Blackmon*, 280 Mich App 253, 261; 761 NW2d 172 (2008). The erroneous admission of

-11-

evidence does not violate a defendant's constitutional rights unless it "so infused the trial with unfairness as to deny due process of law." *Estelle v McGuire*, 502 US 62, 75; 112 S Ct 475; 116 L Ed 2d 385 (1991) (quotation marks and citation omitted). Beyond defendant's general argument, he does not address this issue as one of fundamental fairness. Therefore, we will address the trial court's ruling as an evidentiary issue.

Generally, MRE 404(b)(1) prohibits a party from introducing evidence of another party's other crimes, wrongs, or acts to prove that person's propensity to engage in that type of action. *People v Denson*, 500 Mich 385, 397; 902 NW2d 306 (2017). However,

> [e]xcept as provided in [MCL 768.27b(4) (concerning acts occurring more than 10 years before the offense)], in a criminal action in which the defendant is accused of an offense involving domestic violence or sexual assault, evidence of the defendant's commission of other acts of domestic violence or sexual assault is admissible for any purpose for which it is relevant, if it is not otherwise excluded under Michigan rule of evidence 403. [MCL 768.27b.]

Domestic violence includes causing physical or mental harm to a family or household member. MCL 768.27b(6)(a). MCL 768.27b expands the admissibility of other-acts evidence of domestic violence beyond the extent to which the evidence would be admissible under MRE 404(b). *People v Propp*, 508 Mich 374, 384; 976 NW2d 1 (2021).

The intent of MCL 768.27b is to provide the jury with a complete picture of the defendant's history to help it determine the likelihood that the defendant committed a crime. *People v Cameron*, 291 Mich App 599, 609-610; 806 NW2d 371 (2011). Propensity statutes "permit[] the admission of evidence that MRE 404(b) precludes," but the trial court must still weigh the probative value and prejudicial effect of the evidence under MRE 403. See *People v Watkins*, 491 Mich 450, 469-470, 486; 818 NW2d 296 (2012) (concerning MCL 768.27a, which addresses other acts of criminal sexual conduct). Evidence that supports a propensity inference or a victim's credibility has probative value. *Id*. at 486-487. But evidence may be unduly prejudicial depending on

> (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. [*Id*. at 487-488.]

"[T]he fear of prejudice does not generally render the evidence inadmissible," nor does the fact that the evidence is damaging to some extent. *People v Mills*, 450 Mich 61, 75; 537 NW2d 909 (1995), mod 450 Mich 1212 (1995). The prejudicial effect of the evidence substantially outweighs its probative value when evidence is only marginally probative and there is a danger that the trier of fact may give it undue or preemptive weight, or when using the evidence would be inequitable. *People v Blackston*, 481 Mich 451, 462; 751 NW2d 408 (2008).

In this case, the other acts had probative value because they tended to support defendant's propensity to commit assaultive crimes against members of his household. An unusual frequency of events indicates that the events are logically relevant:

If a type of event linked to the defendant occurs with unusual frequency, evidence of the occurrences may be probative, for example, of his criminal intent or of the absence of mistake or accident because it is objectively improbable that such events occur so often in relation to the same person due to mere happenstance. [*People v Mardlin*, 487 Mich 609, 617; 790 NW2d 607 (2010).]

Other acts are admissible to establish a defendant's common scheme if the defendant's actions show common features to an extent that "indicate[s] the existence of a plan rather than a series of similar spontaneous acts[.]" *People v Sabin (After Remand)*, 463 Mich 43, 65-66; 614 NW2d 888 (2000) (quotation marks and citation omitted). Common schemes need not be identical and need only show sufficient common features to support the inference that such features are part of a general plan. *Id*.

In this case, the admission of testimony regarding other-acts evidence established that defendant had a propensity to be physically violent with his family by punching them, slapping them, popping or smacking them, hitting them with a belt, or pinching them. The trial court found that this evidence was probative because it tended to show motive, intent, and a common plan or scheme. We agree that the unusual frequency of the events and their common features rendered this evidence logically relevant and probative.

We also agree that this evidence was not unduly prejudicial. When considering whether propensity evidence is unduly prejudicial, courts should consider

(1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. [*Watkins*, 491 Mich at 487-488.]

In this case, the acts were all similar to the crime charged. There is no indication that the acts were stale. The other acts certainly were not infrequent, and there is no indication of intervening acts. The reliability of the other acts does not seem to be in question. Regarding the lack of need for evidence beyond the complainant's and the defendant's testimony, the victims in this case were young children, and a review of the evidence indicates that their memories of specific events were not particularly clear. The trial court excluded evidence that the prosecution sought to admit but which did not have common features, such as evidence of starvation regarding the children, and it limited the ex-girlfriend's testimony about other acts of domestic violence to specific acts of choking, hitting with a belt, and punching.

Further, although defendant argues that evidence of defendant's threats was improper other-acts evidence, the trial court explicitly excluded this evidence as other-acts evidence, stating as it related to defendant's ex-girlfriend, "The threats themselves aren't acts. I mean, they may be admissible in terms of what was going on or for some other reason; but a threat is not necessarily another act . . . ." The court made a similar ruling regarding the children's testimony about threats. When the ex-girlfriend and the children testified about defendant's threats, defendant did not object to the testimony. Defendant has not established error because the trial court ruled in his

-13-

favor on this issue. The evidence was admitted because defendant did not challenge admission of the threats on any other basis.

Ultimately, admission of the limited other-acts evidence was probative, and although it was prejudicial to defendant, was not so prejudicial that we are convinced the trial court's decision to admit the evidence fell outside the range of reasonable outcomes.

Second, defendant argues that, generally, MCL 768.27b violates a defendant's constitutional right to due process of law by allowing the introduction of propensity evidence generally. As previously discussed, this issue is unpreserved because defendant did not raise this constitutional issue before the trial court.

The United States Supreme Court has never held "that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v Mitchell*, 329 F3d 496, 512 (CA 6, 2003). The requirement that the trial court admit other-acts evidence only when its probative value is not substantially outweighed by its risk of unfair prejudice protects a defendant's right to due process. See, e.g., *United States v LeMay*, 260 F3d 1018, 1026 (CA 9, 2001) (addressing a similar federal rule). The Michigan Supreme Court has expressly stated that it is not necessary to determine whether, if MCL 768.27a were not subject to MRE 403, admission of propensity evidence would violate a defendant's right to due process of law. *Watkins*, 491 Mich at 486 n 82. Although MCL 768.27a and MCL 768.27b are not the same, they are similar, see *Propp*, 508 Mich at 384-385, and MCL 768.27b is also subject to the MRE 403 balancing test, see MCL 768.27b(1). There is no basis from which to conclude that the trial court committed an error—much less a plain error—by failing to sua sponte hold that MCL 768.27b unconstitutionally infringes on a defendant's due-process rights.

## VI. SENTENCING

Defendant raises several challenges to the trial court's sentencing and his presentence investigation report (PSIR). We conclude that none of these challenges have merit.

Generally, "[t]his Court reviews a trial court's response to a defendant's challenge to the accuracy of a PSIR for an abuse of discretion." *People v Uphaus (On Remand)*, 278 Mich App 174, 181; 748 NW2d 899 (2008). The trial court abuses its discretion when it makes an error of law or when its decision falls outside the range of principled outcomes. *People v Duncan*, 494 Mich 713, 722-723; 835 NW2d 399 (2013). This Court reviews a trial court's findings of fact at sentencing to determine whether a preponderance of the evidence supported them. *People v Maben*, 313 Mich App 545, 549; 884 NW2d 314 (2015).

First, defendant argues that the trial court impermissibly relied on acquitted conduct when sentencing him. The record does not support defendant's assertion. The trial court may not sentence a defendant on the basis of acquitted conduct. *People v Beck*, 504 Mich 605, 629; 939 NW2d 213 (2019). However, it is well established that the party seeking reversal on appeal has the burden to provide the court with a record that establishes the factual basis of his or her argument. *People v Elston*, 462 Mich 751, 762; 614 NW2d 595 (2000). In this case, the trial court's sentencing statements do not refer to allegations that defendant strangled JJ. Instead, the court based its decision on defendant's record, the ongoing nature of the abuse, "probation issues

-14-

that he has had in relation to those previous charge, which are fully—or more fully noted in the presence report," defendant's lack of believable explanation, and the nature of the children's injuries. When referring to these injuries, the trial court stated as follows:

> But more importantly, we're not talking about injuries that were caused simply by a belt, or testimony that indicated that these children were simply "whupped," as they called it, with a belt. They were pinched. They were hit. They had bruising. They had marks. They have scars. This is way above and beyond any kind of discipline or the explanation that defendant tried to give here.

Notably absent from the court's description is any statement that the children were strangled. The record does not support defendant's assertion that the court relied on acquitted conduct during sentencing.

Second, defendant asserts that he is entitled to have his PSIR corrected to remove references to certain types of conduct. We disagree.

A sentencing court is required to respond to challenges to the accuracy of information contained in a PSIR, but the court has "wide latitude" in how it responds to such challenges. *People v Spanke*, 254 Mich App 642, 648; 658 NW2d 504 (2003), overruled in part on other grounds by *People v Barrera*, 500 Mich 14, 22; 892 NW2d 789 (2017). If the court accepts a challenge to information in the PSIR, it must strike the information before sending the PSIR to the Department of Corrections. *Id*. at 649.

"An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue." *People v Harris*, 261 Mich App 44, 50; 680 NW2d 17 (2004). Parties abandon issues on appeal if they "merely announce their position and leave it to this Court to discover and rationalize a basis for their claims . . . ." *Matuszak*, 263 Mich App at 59 (quotation marks and citation omitted).

In this case, defendant's argument regarding JJ's statements about strangulation consists solely of a lengthy quotation from *Beck*, 504 Mich at 626-627, regarding the reliance on acquitted conduct at sentencing, and a claim that the court had stated it considered acquitted conduct. Defendant's factual statement is inaccurate and the citation to *Beck* does not relate to the specific facts of this case. Defendant does not dispute that JJ made statements during a child-abuse interview that defendant had strangled him; instead, he argues that he was acquitted of strangling JJ. Whether to strike factually inaccurate statements from a PSIR, whether the trial court may rely on acquitted conduct during sentencing, and whether a court must strike pretrial statements during which a victim made allegations of which a defendant was eventually acquitted, are different issues. Defendant provides no authority to support his assertion that a victim's interview statements must be stricken from a PSIR if the defendant is ultimately acquitted of the offense (when the trial court did not rely on the acquitted conduct); defendant has not even provided persuasive authority that would support a good-faith legal argument on this point.

Next, defendant argues that his PSIR should be corrected to remove evidence of an act of domestic violence in Arizona. A defendant has the right to challenge the factual accuracy of the information in a PSIR. *Spanke*, 254 Mich App at 648. However, this record does not support that

this information is factually inaccurate. Defendant's PSIR refers to a Children's Protective Services (CPS) referral that a CPS investigator received, in which it was alleged that defendant had punched his ex-girlfriend while driving. Defendant had elicited testimony from this CPS worker about the referral, and she testified that it related to domestic violence the children had witnessed. Defendant did not challenge the inclusion of this information in the PSIR, but it appears to be factually accurate.

Finally, defendant argues that his PSIR should be corrected to state the offense in this case occurred on January 13, 2019, rather than June 25, 2018. Defendant has abandoned this issue.

"An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue." *Harris*, 261 Mich App at 50. Defendant's PSIR refers to the date of the offense as "06/25/2018." However, the information did not charge any specific incident and the trial court instructed the jury that the prosecutor was required to prove beyond a reasonable doubt that the crimes occurred "between June 25, 2018 and September 24, 2019, within Saginaw County." Defendant has not acknowledged that the offense "date" was actually a date range, and he has provided no authority regarding how such a range should be treated for the purposes of a PSIR. We conclude that defendant has abandoned this argument.

Affirmed.

/s/ Anica Letica
/s/ Brock A. Swartzle